AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

United States of America )
v. )
) Case No. 2:19-mj-384
)
Martin Moin )
)
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____SEE ATTACHED AFFIDAVIT_____ in the county of _____ in the
____Southern____ District of _____Ohio_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 50 U.S.C. § 1701-1706; 31 C.F.R. §§ 560.203 and 560.204 and 18 U.S.C. § 371 | Conspiracy to Violate International Emergency Economic Powers Act. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Dustin Dobbs
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 14, 2019

City and state: Columbus, OH

_____
*Judge's signature*

Elizabeth Preston Deavers, U.S. Magistrate Judge
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT, EASTERN DIVISION OF OHIO**
**AFFIDAVIT IN SUPPORT OF COMPLAINT**

I, Dustin Dobbs, a Special Agent with the Federal Bureau of Investigation, being duly sworn, hereby depose and state:

**INTRODUCTION AND SUMMARY OF PROBABLE CAUSE**

1. This affidavit is in support of a criminal complaint charging Martin Moin ("MOIN"), who, along with others, conspired to export equipment from the United States through Canada to Iran without the requisite export license in violation of United States law, namely: the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701-1706; the Iranian Transactions and Sanctions Regulations ("ITSR"), 31 C.F.R §§ 560.203 and 560.204; and Conspiracy to commit offense or to defraud United States, 18 U.S.C. § 371.

2. As set forth in detail below, an investigation has revealed the illegal export of goods from the United States to Iran. Specifically U.S. company Comtech International ("COMTECH"), UE Canada Inc. ("UE CANADA") located in Canada, UE Canada Hong Kong ("UE CANADA HK") located in Hong Kong, and Arman Pishro Sanate Company ("ARMAN"), located in Iran have conspired to export from the United States to Iran certain items without first obtaining the required export license from the United States government in violation of United States law. The facts herein establish probable cause to believe that from at least June 2016 until the present, COMTECH, UE CANADA, UE CANADA HK, and ARMAN conspired with each other to export equipment from the United States through Canada to Iran in violation of the United States law, namely: IEEPA, 50 U.S.C. § 1701-1706; ITSR, 31 C.F.R, §§ 560.203 and 560.204; and Conspiracy to commit offense or to defraud United States, 18 U.S.C. § 371.

**AGENT BACKGROUND**

3.  I have been employed as a Special Agent of the Federal Bureau of Investigation ("FBI") since September 2017, and I am currently assigned to the Cincinnati Division, Columbus Resident Agency, as a member of the Counterintelligence Squad. I am responsible for investigating, among other crimes, the illegal transfer from the United States of commodities, technology, and services that are regulated by the United States Departments of State and Commerce (hereinafter "DOS" and "DOC") and by the Department of the Treasury, Office of Foreign Assets Control ("OFAC"). I have received both formal and informal training in the detection and investigation of said offenses. As a result of my training and experience, I am familiar with the federal laws relating to the unlawful exportation of goods and technology. I have participated in various investigations, including those with a foreign counterintelligence nexus. As a federal agent, I am authorized to investigate violations of laws of the United States. I also served honorably for nine years in the United States Air Force.

4.  I have personally participated in the investigation described herein. I have also received information from other federal law enforcement officials relating to this investigation. I have reviewed relevant documents and reports of witness interviews during the course of this investigation. The statements contained in this affidavit are based on my own observations, document reviews, and reliable information provided to me by other law enforcement officials.

5.  Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of IEEPA, the ITSR, the Foreign Trade Regulations ("FTR"), 15 CFR 30.3(a), and an ongoing criminal conspiracy to commit these offenses have been committed by COMTECH, UE CANADA and others.

## STATUTES AND REGULATIONS

6. IEEPA, codified at Title 50, United States Code, Sections 1701-1706, confers upon the President authority to deal with unusual and extraordinary threats to the national security and foreign policy of the United States.  Section 1705 provides, in part, that "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this title."  50 U.S.C. § 1705(a).

7. Beginning with Executive Order No. 12170, issued on November 14, 1979, the President found that "the situation in Iran constitutes an unusual and extraordinary threat to the national security, foreign policy and economy of the United States and declare[d] a national emergency to deal with that threat."  On May 6, 1995, the President issued Executive Order No. 12959, adopting and continuing Executive Order No. 12170 (collectively, the "Executive Orders"), and prohibiting, among other things, the exportation, re-exportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person. The Executive Orders authorized the United States Secretary of the Treasury to promulgate rules and regulations necessary to carry out the Executive Orders. Pursuant to this authority, the Secretary of the Treasury promulgated the Iranian Transactions Regulations (in 2012 renamed the Iranian Transactions and Sanctions Regulations, or "ITSR") implementing the sanctions imposed by the Executive Orders.

8. The ITSR, Title 31, Code of Federal Regulations, Part 560, prohibits, among other things, the exportation, re-exportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, of goods, technology, or services to Iran or the Government of Iran, including the exportation, re-exportation, sale or supply of goods, technology or services to a third country knowing that such goods, technology

or services are intended for Iran or the Government of Iran, without a license from the United States Department of the Treasury, OFAC.  31 C.F.R. § 560.204.

9. The ITSR also prohibits transactions that evade or avoid, have the purpose of evading or avoiding, cause a violation of, or attempt to violate the ITSR.  31 C.F.R. § 560.203.

10. Under IEEPA, it is a crime to willfully violate any regulation promulgated thereunder, including the EAR.  See 50 U.S.C. § 1705(c).

11. The Department of Commerce, through the U.S. Census Bureau ("Census") requires the filing of electronic export information ("EEI") through the Automated Export System ("AES") or AES Direct pursuant to Title 13, United States Code, Section 305 and the Foreign Trade Regulations ("FTR"), Title 15 C.F.R., Part 30.  The purpose of these requirements was to strengthen the United States government's ability to prevent the export of certain items to unauthorized destinations and end-users because the AES aids in targeting, identifying, and when necessary confiscating suspicious or illegal shipments prior to exportation. 15 C.F.R. § 30.1(b).  Any person who knowingly fails to file or knowingly submits false or misleading export information through the AES is guilty of a crime.

### RELEVANT INDIVIDUALS AND ENTITIES

12. Cooperating Witness 1 (CW1) is a Naturalized United States Citizen of Iranian descent. CW1 is the owner and manager of COMTECH in Columbus, Ohio within the Southern District of Ohio.  COMTECH is a United States Limited Liability Company and, according to business records filed with the State of Ohio, is dedicated to the sale and servicing of computer and electronic parts.  The actual commodities COMTECH dealt in were not limited to computer and electronic parts.  In 2016 CW1 signed a Plea Agreement, which included cooperation terms.  The plea agreement—which has not yet been filed in this District, but will be in the near future—covers violations of the same acts that are the subject of this complaint.  Information provided by CW1 has

been corroborated by facts established by means independent of CW1 during the course of the investigation.  For example, evidence indicates CW1 had contacts for individuals and companies in Dubai, which acted as middlemen for illegal shipments to Iran.  The middlemen's activities and shipments to Iran, as described by CW1, have in fact shown to be true through records obtained during the course of the investigation and previous email search warrants granted by this Court, noted below.

13. Mohammad Amin Farshchi ("FARSHCHI"), an Iranian national, is the owner and Managing Director of the Iranian based company, Arman Pishro Sanate ("ARMAN"). ARMAN is  located at 4th Floor, Unit 10, Number 3, Shahid Azizollah Street, Mirzae Shirazi Street, Tehran, Iran, telephone number (+9821) 88937920.  Internet research indicates that ARMAN is in the business of providing technical services in the fields of oil, gas, petrochemical, and power plants.

14. Martin Moin ("MOIN"), a Canadian citizen of Iranian descent, is the owner and president of UE Canada ("UE CANADA"), 48-2355 Derry Road E., Mississauga (Toronto), Ontario, L5S 1V6, Canada, telephone number: 905-673-8282.  According to UE CANADA's publically available website, www.uecanada.com, accessed on March 15, 2018, they are described as an independent freight forwarding company with its head office based in Toronto, Ontario, Canada. UE CANADA is a comprehensive international forwarding and customs brokerage service provider, including integrated trucking, packing, warehousing, and distribution. According to emails, which include communications of CW1 reviewed by Your Affiant, such emails reveal that MOIN is directly involved in the conspiracy to illegally export U.S.-origin goods to Iran and is the user of the email account, moin@uecanada.com.

15. MOIN is also the owner and president of the U.S. based business, United Expeditors (USA) Inc. ("UE USA"), 1314 Reddleshire Lane, Houston, TX, 77043, 281-456-3555.

According to UE CANADA's website, UE USA is a subsidiary of UE CANADA.  UE USA was established in 2010.

16. MOIN is also the owner and president of MOINeX Limited ("MOINEX"), 48-2355 Derry Road E., Mississauga (Toronto), Ontario, L5S 1V6, Canada, telephone number: 1-800-936-3703. This is the same address of UE CANADA and has been identified as being used for shipments destined for Iran.

17.  UE Canada (Hong Kong) Limited ("UE CANADA HK"), 13/F WAH KIT Commercial Building, 302 DES VOEUX RD, Hong Kong, is another UE CANADA branch.  According to MOIN's publically available LinkedIn page accessed on March 15, 2018, he is the owner of UE CANADA HK. As more fully described below, UE CANADA HK was identified as being the recipient of shipments that were ultimately transshipped to Iran.

18. CW2, a Canadian Citizen of Brazilian descent, was an employee of UE CANADA located in Ontario, Canada.  According to emails provided to investigators by CW1, and others obtained by law enforcement, CW2 is directly involved in the conspiracy to illegally export U.S.-origin goods to Iran and is the user of the email account referred to below as "CW2's email."  CW2 has signed a plea agreement, including cooperation terms, for violations of the same acts that are the subject of this complaint.  Information provided by CW2 has been corroborated by facts established by means independent of CW2 during the course of the investigation.  For example, CW2 indicated that MOIN was responsible for and knowledgeable of UE CANADA's role in shipments to Iran. Records obtained during the course of the investigation and previous email search warrants granted by this Court confirm MOIN's knowledge and involvement.

19. Gira Goodarzi ("GOODARZI"), an Iranian national, was an employee of UE CANADA located in Ontario, Canada.  Information obtained from publically available LinkedIn site accessed on July 26, 2016, revealed that GOODARZI previously worked for Satiar

Sea Shipping, which is a shipping company located in Iran.  According to emails provided to investigators by CW1, GOODARZI is directly involved in the conspiracy to illegally export U.S.-origin goods to Iran and is the user of the email account, gira@uecanada.com.

20. J&S Express (Hong Kong) Ltd ("J&S"), located at A7-9, 8/F, Block A, Proficient Industrial Center, 6 Wang Kwun Road, Kowloon Bay, Kowloon, Hong Kong, is an import/export shipping company, which specializes in supply chain management.  UE CANADA and UE CANADA HK used J&S to handle the paperwork and logistics for UE CANADA shipments transshipped from Hong Kong to Iran.

21. Simor Industrial Solutions Ltd ("SIMOR") is located at 5000 Dufferin Street, North York, Ontario, M3H 5T5, telephone number 1-855-222-6555.  Internet research indicates that SIMOR is a supplier of equipment and parts for Oil & Gas, Water, and Locomotive industries.  Mory FAZILI, an employee of SIMOR, who utilized email address mory.fazili@simorltd.com, was also involved in the illegal shipments to Iran.

22. According to internet searches, Payam Dahi Ertebat ("PDE") is an international courier service provider based in Iran, which supports both international and domestic services.  PDE is located at No. 35, Haghanie Highway, Tehran, Iran, telephone number (+9821) 88202220.

23. Limco Logistics Inc ("LIMCO") is a U.S.-based freight forwarding company located at 12550 Biscayne Boulevard, Suite 606, North Miami, Florida 33181, telephone number (305) 899-5100.

## Facts Establishing Probable Cause

24. The analysis of the emails obtained from CW1, email providers, and the companies involved in the ongoing conspiracy, as well as information provided by CW1 and CW2 revealed the following.

### August 2016 shipment of gas turbine parts involving COMTECH, MOIN, CW2, and UE CANADA

25.  On or around March 7, 2016, CW1 attempted to send a total of eight gas turbine engine parts, including four assemblies, valued at approximately $120,000 to a cargo company in Dubai.  This transaction was initiated in February 2015 and ARMAN, located in Iran, was to be the recipient of the parts.  The DOC/BIS/OEE stopped this shipment and redirected it back to the United States.  Following this transaction, CW1 started cooperating with law enforcement regarding his involvement in the shipment of U.S.-based goods ultimately destined for Iran.

26.  On June 3, 2016, CW1 offered the following in a proffer session:

   a.    On or around June 1, 2016, CW1 had been directed by CW1's Iranian point of contact, Amin FARSHCHI, to reach out to a shipping company located in Canada called UE CANADA INC ("UE CANADA").  FARSHCHI provided CW1 with a business card for an individual employed by the company to whom he should place the telephone call.  The business card read as follows: UE CANADA INC, 48-2355 Derry Road E., Mississauga (Toronto), Ontario, L5S 1V6, Canada, telephone number: 905-673-8282 and 1-800-936-3703, email address: CW2's email,[1]  website: www.uecanada.com.  FARSHCHI told CW1 to ask for an individual named "MOIN."  As noted above, MOIN has been identified as Martin MOIN, President, UE CANADA INC.  CW1 spoke to MOIN in Farsi while on the phone call.  CW1 said that MOIN told him that UE CANADA could handle getting items shipped into Iran.  MOIN told CW1 that either UE CANADA, or another non-U.S. company, would purchase the U.S.-origin items, which needed to be shipped from CW1, then ship them to a non-U.S. company for shipment to Iran.  MOIN said that the items would be

---

[1] As noted above, CW2's email address is referred to in this document as "CW2's email."

shipped to Kish Island, located in the Persian Gulf, prior to being
transshipped into mainland Iran.  CW1 said that MOIN asked him to complete
an invoice which listed each of the parts being sent and send it to him, but
asked CW1 to leave the shipper and buyer information blank so that he could
fill it in later.

b.     CW1, at the time, did not know the name of the individual or company in the
U.S. who would be involved in picking up the shipment, however, CW1
thought that MOIN mentioned something about an entity in Houston, which
would be involved.  When CW1 asked about this, MOIN said that he would let
CW1 know soon.  MOIN further indicated to CW1 that he could accept future
shipments from CW1 that needed to be shipped to Iran.

27. On or around June 1, 2016, in response to the previous call with MOIN, CW1 sent an
email to MOIN at email address moin@uecanada.com, which included the
approximate dimensions and weight of the shipment and CW1's company tax
identification (ID) number and address.

28. On or around June 1, 2016, CW1 received an email response from MOIN, who used the
email address moin@uecanada.com, which directed CW1 to speak to an individual
named CW2 about the shipment.  CW2 was copied on the email.

29. Later, still on June 1, 2016, CW1 received an email from CW2, in which CW2
acknowledged receipt of CW1's email and told CW1 that she had sent a request to
their overseas partner for pricing on the shipping costs and would get back to CW1 as
soon as possible.  MOIN was copied on the email.

30. On or around July 7, 2016, CW1 received an email from CW2, with MOIN copied,
which provided MOIN's telephone number as 416-729-5798. That same day, CW1
sent an email to CW2 which said:

9

> Hi CW2,
>
> Thank you for your email, the following draft is the letter from us that the shipment is ready and let me know whenever you ready to pick it up.
>
> Dear Mr Moin.
>
> As per conversation we had last month regarding shipping our products to Iran, seems like everything falls in place at your side and these parts are in our possession now and ready to pick up by UE Canada.  Please let me know what information you need from me to arrange shipment.
>
> I also have other shipments that I need moved to Iran and am looking to get good prices from you and establishing a good business relationship.  I trust that you and UE Canada company can come through with these shipments.
>
>  Thank you

31. CW2 responded via email to CW1 the same day saying:

> Hello (CW1), Thank you very much for trusting your business to us.
>
> Due to religious holiday, we have not yet received instructions from you partner (reading in copy). However we shall gladly plan the pickup early next week.
>
> Please let us know the exact pickup address, final package dimensions and weight in order to coordinate this shipment.
>
> Thank you and best regards,
>
> (CW2)

32. In the above email chain, which shows UE CANADA was facilitating the shipments, copied on the CC: line were the following email addresses: argisht@arminshipping.com, golnaz@arminshipping.com, and moin@uecanada.com, MOIN's email address.

33. Armin Shipping is a freight forwarding company in the Middle East used by UE CANADA to facilitate the transfer of U.S.-origin goods into Iran.  According to Armin Shipping's publically available website, they describe themselves as: "Armin shipping and international transport company (ATC) is a long established company in Iran (since 1995) with our own offices in Turkey, Bulgaria and Romania and agencies in

the major Iranian ports. Our mission is to meet or exceed customers' expectations all of the time by providing total solutions for Exportation, Importation and Transit projects in the types of sea, inland and air, cost effective and in time."

34. According to the website, whoisdomaintools.com, as of April 2016, Armin Shipping's website is registered to Arbie SARKISSIAN, No. 2, Aminian St, Tehran, Iran.

35. In early July, CW1 was directed by Your Affiant and other law enforcement to seek information from UE CANADA to confirm the intended shipments were to go to Iran and to obtain the manner in which the illegal items would be exported to Iran.

36. For example,

    a.    On or around July 13, 2016, CW1 sent an email to MOIN:

*Hello Mr Moin,*

*I received your call yesterday and wanting to discuss how to ship those parts( Compressor parts  and others) to Iran with me. However, Parts are ready and you could Pick it up any time. But I don't know how to proceed with this process since this is the first time working with UE Canada. Please feel contacting me either by phone or email, preferably email.*

*Thank you*

*(CW1)*

    b.    On the same day, MOIN responded via email and indicated that he was forwarding CW1's email to CW2 so that she could provide the information which CW1 was asking for.  CW2 was copied on the email.

37. On or around July 13, 2016, CW2 responded via email with MOIN copied:

*Dear (CW1),*

*Please refer to the attached e-mails that I sent you yesterday which shows the required information for us to arrange the collection of your shipment.*
*Also, if you have any specific question you can contact Ms Maya (she will be coordinating with you for the pickup) at tel# Direct Line: (786)509-9576 and Tel: 305 899 5100 Ext 1003*

*You can also contact me if any additional concerns or clarification that you may be required. Kindly confirm receipt of this message.*

*"Quote"*
*From: UE Canada – General*
*Sent: Tuesday, July 12, 2016 3:32 PM To:*
*Cc: Maya Karakaeva*
*Subject: RE: your shipment from Ohio*
*Importance: High*
*Hello (CW1),*
*We thank you very much for you and your partner (at destination) for trusting the business to us.We are assigning this pickup order to our partner in your area, pending fol lowing information from you.*
*Pickup location address/zip code/ contact person/ tel# Documentation: Commercial Invoice and packing list should be issued to the order of UE Canada (Hong Kong) Limited as below and scanned copy should be sent to me by e-mail;*

*UE Canada (Hong Kong) Limited*
*13/F WAH KIT COMMERCIAL*
*BUILDING*
*302 DES VOEUX ROAD, CENTRAL*
*HONG KONG*
*TEL: 86-755-2877-53*

*Also, a Consent to Screen Letter will have to be placed on your letter head, duly signed and dated by you (letter sample to follow)*
*We also require your company EIN# including full company name, address, tel# contact person with first and last name (shipper of records for this shipment) in order to process the exports declaration*

*Our local partner in copy to this message, will coordinate the pickup with you. Looking forward to hear back from you. Thank you and best regards,*

*(CW2)*
*"Unquote"*
*Thank you and best regards,*
*(CW2)*

38. On or around July 15, 2016, CW1 sent the following email to CW2, KARAKAEVA, and
MOIN:

*Hello (CW2) & Maya,*

*I am working on the requested Documents now.  However, I have a question about using
my information on the commercial invoice and SLI (shipper's letter of instruction) . I
would like to know ,what kind of Guarantee you could give me that the above document
would not end up in Iran and/ or is identified by the authorities.*

*We are a US company and as you know doing business with Iran is prohibited because of
sanction and then both UE canada & Comtech get in big trouble because of US goods.*

*Therefore, base on the above reason, I would like to know whether you have another
company that makes the invoice?*

*I would like to make sure that we could continue this kind of business relationship in the
future. Thank you*

*(CW1)*

39. Also on July 15, 2016, CW2 responded to CW1, with MOIN and GOODARZI copied in
the email:

*Dear (CW1),*

*We really don't appreciate the kind of language and message used on the below e-mail
to us, copying our partner.*
*Your business context with us is confidential and we would recommend you to please do
not copy any other parties with regards to any messages including the final destination
of the cargo and your documentation questions.*

*We been trying to reach you by phone and left voice message and are yet to hear back
from you.*

*If you can kindly spare a few minutes and contact Mr. Moin at tel: 1 416 729 5798 or call
our office we can clarify the subject with you for your piece of mind. Thank you and best
regards,*

*(CW2)*

40. CW1 contacted MOIN by telephone on or around July 19, 2016. CW1 apologized to
MOIN for the earlier email. CW1 indicated that MOIN asked whether CW1 had
received any information from UE CANADA regarding the shipment documentation.
MOIN then told CW1 that CW1 should receive documentation from UE CANADA that
explains how to fill out the forms (invoice) and that CW1 should return them to UE
CANADA along with an address for a location in the U.S. where their (UE CANADA's)
U.S. agent could pick up the shipment. CW1 then said that MOIN told CW1 that the
shipment would be going through their office located in Hong Kong.

41. As referenced previously in this affidavit, on February 3, 2017, the U.S. Department of
Justice, Office of International Affairs, approved a "Request for Assistance" via the
MLAT between the U.S. Government and the Government of Canada. On April 20,
2017, the Honorable Michael Strober, Canadian Magistrate Judge for the District of
Montreal, Province of Quebec, signed a search warrant authorizing the search of email
accounts associated with UE CANADA. Namely, this included the email accounts
known by Your Affiant to be utilized by Martin MOIN (moin@uecanada.com) and
CW2.

42. Analysis of emails obtained via the MLAT reveal that MOIN spoke to SARKISSIAN
about the COMTECH shipment in June 2016, describing the shipment as one (1) case
of spare parts weighing 45.00KG, valued at approximately $39,000.00 USD,
originating from Columbus, Ohio, and going to Iran. In addition, MOIN offered to
SARKISSIAN the use of UE CANADA HK as a middleman company that could transship
the spare parts to Iran. Furthermore, in January 2017, MOIN was contacted by
FARSHCHI via email with an inquiry about the status of the shipment. In the email,
FARSHCHI references a previous telephone call he had with MOIN regarding the
shipment, which was being held up in the USA. FARSHCHI also tells MOIN that he
spoke to SARKISSIAN who told him that MOIN could help get the shipment moving by
contacting USA Customs. MOIN responds to FARSHCHI's email on January 25, 2017,

writing that they have been trying to contact CW2 but have not had any success. On
June 22, 2018 CW2 offered the following in a proffer session:

    a.    CW2 stated that UE CANADA HK was set up in MOIN's name and that it was
set up to export U.S.-origin goods to Iran. CW2 also stated that MOIN renews
the license for UE CANADA HK every year and that UE CANADA HK always
has a different address ever time the license is renewed. CW2 said that UE
CANADA HK does not actually have a physical address location and when
goods are shipped to Hong Kong by UE CANADA, they go to J&S. According to
CW2, J&S is used for exporting U.S.-origin goods to Iran on behalf of UE
CANADA. UE CANADA HK's financial transactions are done through HSBC
Bank in Hong Kong.

43. The July 15, 2016 email, referenced in paragraph 60, as well as other conversation
that occurred between MOIN, SARKISSIAN, and CW1, indicates that MOIN was aware
the shipment was intended for Iran and still carried on with the shipment. Based on
my training and experience, and information obtained from CW1, this is indicative of
MOIN's knowledge that exporting U.S.-origin items to Iran is a violation of U.S. law.
Further, as part of the conspiracy, MOIN instructed CW2 to direct CW1 to complete
shipping documents, including a Commercial Invoice and Shipper's Letter of
Instruction (SLI), showing a destination of UE CANADA HK, when in fact the true
destination was Iran, therefore causing the submission of false and misleading EEI
through the AES in violation of 13 U.S.C. 305.

44. On or around August 12, 2016, the shipment described above was scheduled to be
exported from the United States. The EEI transmitted to AES listed the shipper as:
COMTECH CONTROLS INTL, 1255 N. Hamilton Rd, Columbus, OH 43230. The
consignee was listed as: UE CANADA (HONG KONG) LIMITED, 13/F WAH KIT

COMMERCIAL BUILDING, 302 DES VOEUX RD, HONG KONG, HK. The description of the shipment was parts, with a value of $134,849.

### Additional UE Canada Transaction to Iran—May 2016

45. Since receiving the UE CANADA emails from the above referenced Canadian MLAT, Your affiant reviewed additional shipments destined for Iran involving CW2, UE CANADA, and entities affiliated with UE CANADA. The transaction described below reveals the manner and means of the conspiracy to export U.S-origin goods to Iran by MOIN, CW2, UE CANADA, UE CANADA HK, J&S, and PDE, an entity in Iran, in violation of IEEPA and the ITSR. The completed transaction is only one (1) example of the 23 known transactions, since 2015, involving UE CANADA, UE USA, UE CANADA HK, MOIN, and CW2, all of which involve the shipment of U.S.-origin goods to Iran.

46. On or around April 28, 2016, CW2, using the CW2's email account received an email from FAZILI, using the email account mory.fazili@simorltd.com, with the subject line, "Order," stating: "Good day (CW2), Here attached is the info, Please get me your best quote ASAP. Best rgds Mory." Attached to the email were two (2) files, titled Packing list 4011.pdf, and Invoice 4011.pdf. According to the corresponding email chain, these attachments were prepared by an employee at Clark Industrial Power LLC (CLARK), 103 East Butterfield Trail, PO Box 127, Gilman, Illinois 60938. The Bill To address shown in the Invoice was for SIMOR in Canada. The Ship To address shown on both attachments was for UE CANADA HK in Hong Kong. The documents contained a quote for various spare engine parts to be sent on four (4) skids weighing 2,323 pounds. The listed value of this quote is $51,897.42 USD. On September 13, 2018, CW2 offered the following in a proffer session:

    a.    FAZILI, who is of Persian descent and lives in Halifax, Nova Scotia, Canada, owns and operates SIMOR INDUSTRIAL SOLUTIONS LTD (SIMOR), based in Toronto, Canada, area. CW2 stated that SIMOR has operated a warehouse

located in North York, Toronto, Canada, for approximately six months where equipment which has been imported from the U.S. is stored prior to shipments overseas. CW2 was aware, based on having been in contact with FAZILI via telephone and email on multiple occasions, that FAZILI had brokered shipments to end-users who were located in Iran.

b.    CW2 went on to state that Martin MOIN was also aware that some items/shipments which FAZILI asked UE CANADA to provide shipping service were ultimately destined for Iran.  CW2 stated that when facilitating shipments as an employee of UE CANADA that were destined for Iran, MOIN instructed CW2 to use the words "Final Destination" instead of "Iran" when discussing shipments that were destined for Iran via telephone and email. CW2 said the reason for this was because MOIN knew that U.S. laws prohibited shipments of U.S. goods to Iran.

47. On or around April 28, 2016, CW2 sent an email to Michael Lyamport (LYAMPORT) and Maya Karakaeva (KARAKAEVA) at Limco Logistics (LIMCO), who used email addresses mike@limcologistics.com and maya@limcologistics.com, respectively, with the subject line, "Quotation request – Air freight" stating in part: "Hello Michael, We need Air Freight rates based on the following. Pickup from Door: Clark Industrial power LLC, 103 E Butterfield Trail, PO Box 127, Gilman, IL 60938-0127, Deliver to: Hong Kong Airport, Commodity: Spare Parts, 4 skids, total weight 2,323 pounds/1,056 kg."

48. Also on April 28, 2016, CW2 sent an email to jnshkg@jns-scm.com aka J&S Supply Chain Management Co Ltd with the subject line, "(HKG-IKA) Quote request –Air-Simor," stating in part, "Hello Karen, We have another quote request which needs your assistance.  Please quote to receive the goods in HKG and arrange Air freight to final destination.  Commodity: Spare Parts.  4 skids, total weight 2,323 pounds." CW2

also included the email address belonging to Martin MOIN on the CC line, moin@uecanada.com.

49. Based on training and experience, Your Affiant is aware that HKG is the international airport code for Hong Kong International Airport and that IKA is the international airport code for Tehran Imam Khomeini International Airport.

50. Based upon the April 28, 2016, email conversation mentioned above between CW2 and J&S, as well as upon the July 15, 2016, email conversation mentioned above in paragraph 61, CW2 is acknowledging, and MOIN is aware of, the fact that the U.S.-origin goods from CLARK are ultimately destined for an end-user located in Iran. It is a violation of IEEPA to willfully take actions or conspire to take actions to facilitate the shipment of goods to Iran without a license from the U.S. Office of Foreign Assets Control (OFAC). None of the parties involved in the transactions in this affidavit acquired a license from OFAC. Based on the above statements and the information in this affidavit, Your Affiant has probable cause that MOIN was aware of the sanctions under IEEPA and took actions to violate those sanctions.

51. On or around May 2, 2016, CW2 sent an email in response to LYAMPORT and KARAKAEVA from LIMCO in which CW2 indicated that UE CANADA had secured the shipment and asked for LIMCO to schedule collection of the shipment at CLARK. In the same email, CW2 also said the following, "Also, I will file the AES on shipper's behalf as soon as I have the booking details from you and I will send you the AES report#." Attached to this same email was a document titled, "Limco Air Copy of SLI SED.xls." Your Affiant reviewed this document and found it to be the Shipper's Letter of Instruction ("SLI") for the shipment, on which the following information was reported: U.S. Principal Party of Interest- Clark Industrial Power LLC; Ultimate Consignee- UE CANADA HK, 13/F WAH KIT Commercial Building, 302 DES VOEUX RD, Hong Kong; Forwarding Agent- Limco Logistics Inc, 12550 Biscayne Bvld, Suite 606,

18

Miami, FL 33181 USA; Country of Origin- USA; Pieces (PCS)- 4 skids; Description-
Engine Spare Parts; Schedule B Units- 8607.91.00.00, Shipping Weight- 1,056 kg.

52. Following this exchange, on May 5, 2016, CW2 received an email from the email
address DoNotReply@cbp.dhs.gov with the subject line, "AES Direct Filing –
AE16051831" stating that the AES filing made by CW2 was received on May 5, 2016 at
11:39:36AM and that it had been 'ACCEPTED' and given Internal Transaction Number
(ITN) X20160505687946.

53. Your Affiant reviewed the above AES filing submitted by CW2 for ITN
X20160505687946 and determined the following: Date of Exportation- May 7, 2016;
Ultimate Consignee- UE CANADA HK, 13/F WAH KIT Commercial Building, 302 DES
VOEUX RD, Hong Kong; Forwarding Agent Name and Address- UE CANADA INC, 1314
Reddleshire Lane, Houston, TX 77043; Item Description- Engine Spare Parts; Shipping
Weight- 1,056 kg; Value- $51,897 USD.  As part of the ongoing scheme, UE CANADA is
using the Houston based address in an attempt to obscure the fact that they are a
foreign based company filling EEI to AES in violation of U.S. law.

54. As previously mentioned in this affidavit, according to U.S. law and the Federal Trade
Regulations ("FTR"), 15 CFR 30.3(a), the filer of Electronic Export Information ("EEI")
for export transactions is either the USPPI or the U.S. authorized agent.  All EEI
submitted to the AES must be complete, correct, and based on personal knowledge of
the facts stated or on information furnished by the parties to the export transaction.
The filer must be physically located in the United States at the time of filing, have an
Employer Identification Number ("EIN") or Data Universal Number System ("DUNS"),
and be certified to report in the AES.

55. On or around May 6, 2016, CW2 continued to converse with J&S regarding this
transaction, sending an email to J&S stating in part, "Hi Karen, Please see attached
pre-alert with Airway Bill ("AWB") and also commercial invoice and packing list.

19

Kindly arrange to clear and collect the goods and bring it to your warehouse. I will be
sending one more skid from Canada next week which has to be combined with this
cargo and thereafter to be shipped to final destination. Goods for the attached AWB
are expected to arrive HKG on May 8." In addition, MOIN's email address is on the To:
line of this email.

56. On or around May 6, 2016, J&S acknowledged receipt of the email from CW2
indicated in previous paragraph.

57. On or around May 11, 2016, CW2 sent an email to J&S re-stating what she said in her
email to J&S on May 6, 2016, but added, "This is the additional skid from Canada
which has to be combined with this cargo and thereafter to be shipped to final
destination. Please let me know as soon as they are at your warehouse and kindly
remove any labels or paperwork attached to the skids. I will send you a full send you
copies the commercial documents and instructions to ship these goods from Hong
Kong later this week. Goods for the attached AWB are expected to arrive HKG on May
14."

58. On or around May 16, 2016, CW2 sent a follow-up response email to J&S, which
stated in part, "Attached please also find AWB's instructions. Commercial documents
for Exports purposes in HKG also attached per shipment. Please send me the booking
details and AWB copy ASAP." In addition, on the following line of the email, CW2
reiterates her previous request by capitalizing and highlighting the following
statement to J&S, "PLEASE DO NOT SEND COMMERCIAL DOCUMENTS WITH THE
CARGO OR AWB POUCH. PLEASE REMOVE ANY DOCUMENTS OR LABELS ATTACHED
TO THE SKIDS. HS Code: 8607.91.00.00. Origin: USA. Once again, Martin MOIN's
email address, moin@uecanada.com is listed on the To: line of this email. On
September 13, 2018, CW2 offered the following in a proffer session:

Case No. 1:25-mj-00239-KAS    Document 1-1    filed 09/11/25    USDC Colorado    pg
Case: 2:19-mj-00384-EPD *SEALED* Doc #: 1 Filed: 05/14/19 Page: 22 of 26 PAGEID #: 22
22 of 26

    a.    CW2 said while working on shipment services at UE CANADA that MOIN, at the behest of an Iranian customer named Gorji NIA, had given CW2 verbal instructions to instruct J&S to change the markings on the packaging for all shipments which were going to Iran. This included changing/altering the country of origin.

59. Through training and experience, Your Affiant is aware that the above actions, including removing labels and identifying documents from U.S.-origin goods for transactions destined to Iran, as well the actions explained throughout this affidavit, are indicative of an intent to violate sanctions.

60. Attached to the May 16, 2016 email mentioned above were documents titled, "shipper's Instruction-air simor.xls" and "20160516151047233.pdf." Your Affiant reviewed the shipper's instruction noted here and found the following information listed on an SLI with J&S Express (H.K.) Ltd letterhead: From Shipper- UE CANADA HK, 13/F WAH KIT Commercial Building, 302 DES VOEUX RD, Hong Kong; Consignee- Pyam Dahi Ertebat (PDE), No. 35, Haghanie Highway, Before Jahan Koodak Cross St, Tehran, Iran, telephone number (+9821) 88202220, Contact: Hesam Taghavi; 5 pallets, EMD Engine Parts. In addition, also attached to the same email was a document with UE CANADA HK letterhead which was titled "CERTIFICATE OF ORIGIN." This attachment which was dated May 12, 2016 and had PDE, located in Iran, on the Ship To line, also had the following information shown on it: "Origin: USA, Number of Packages: 5 skids, Custom Tariff #: 8607.91.00.00." Clearly stated at the bottom of the page was the following: "We hereby certify that the above goods originated from the USA, UE CANADA (HONG KONG) LIMITED."

61. From the above described email transactions, it is clear that the end-user for the U.S.-origin goods was located in Iran and that MOIN and CW2 were aware the shipment was intended for Iran. As part of the conspiracy detailed in this affidavit, CW2 also

submitted EEI into the U.S. Government's AES showing a destination of UE CANADA
HK, therefore causing the submission of false and misleading information EEI through
the AES in violation of 13 U.S.C. 305.  Based upon these and the other statements in
this affidavit, and based upon Your Affiant's training and experience, MOIN's conduct
is indicative of knowledge that exporting U.S.-origin items to Iran is a violation of U.S.
law, as well as indicative of intent to violate U.S. law.

### Additional UE Canada Transactions to Iran—2017-2018
### Printing Machine Shipments

62. The investigation has revealed that Canada-based company PRINTER'S PARTS &
    EQUIPMENT (PPE), located in Scarborough, Ontario, Canada, buys parts from auctions
    in the U.S. and Canada, and is a supplier for DMD GRAPHICS INC (DMD), Vaughan,
    Ontario, Canada.  DMD is owned by Mahmoud ZOLFAGHARI, who also owns a printing
    company located in Tehran, Iran.  Analysis of CW2's email correspondence from
    January 2017 revealed that CW2 linked ZOLFAGHARI to KHOJASTEH PRINTING
    COMPLEX (KHOJASTEH), Number 73, Khaghani Street Somayyeh Street, Tehran, Iran,
    in written discussion with a shipping company called MOSACO SHIPPING &
    FORWARDING LLC (MOSACO), Dubai, UAE.  According to CW2, MOIN and
    ZOLFAGHARI are good friends and ZOLFAGHARI often contacts MOIN and UE
    CANADA to ship items to Iran.

63. Investigation conducted by the FBI/DOC has revealed that, in April 2018, a shipment
    of two (2) large printing press machines which were purchased in the United States
    by PPE on behalf of DMD.  A review of the commercial documents for these shipments,
    which were obtained by DOC, shows ZOLFAGHARI's name associated with DMD.  The
    FBI/DOC found that these printing machines were both destined for Iran, but were
    being shipped there via middleman companies located in Germany and UAE,
    respectively.  Payment for both shipments was completed using MOIN's bank account
    at HSBC Bank in Hong Kong.  These printing machines were ordered to be re-

Case No. 1:25-mj-00239-KAS    Document 1-1    filed 09/11/25    USDC Colorado    pg
Case: 2:19-mj-00384-EPD *SEALED* Doc #: 1 Filed: 05/14/19 Page: 24 of 26  PAGEID #: 24
24 of 26

delivered to the United States by the U.S. Department of Commerce, Office of Export
Enforcement (DOC-OEE).  On September 13, 2018 CW2 offered the following in a
proffer session:

a.      CW2 said that stated that PPE buys parts from auctions in Canada and the
U.S. and is a supplier for DMD.  CW2 stated that DMD is owned by Mahmood
ZOLFAGHARI and ZOLFAGHARI also owns a printing company in Tehran,
Iran.  CW2 said MOIN and ZOLFAGHARI are good friends and ZOLFAGHARI
often uses UE CANADA to ship items to Iran.  CW2 was aware that there were
multiple recent shipments of large printers, which CW2 had assisted with
and were destined for Iran, but had been sent there via Germany and UAE.
UE CANADA was paid for these shipments into the HSBC account located in
Hong Kong.

b.      CW2 stated that MOIN has a bank account at HSBC in Hong Kong which is
used for transactions involving shipments going to Iran.  CW2 said MOIN set
up the account for this purpose and that Iranian banks and some companies
find that it is both easier and permitted to send monetary wire transfers to
HSBC.

## CONCLUSION

64. Based on the facts outlined in this affidavit, Your Affiant states that there is probable
cause to believe that MOIN did knowingly and willfully conspire with others to
defraud the United States by interfering with the lawful government functions of
various federal agencies, including the FBI and Department of Commerce, in the
ascertainment and collection of export information and the authority to inspect and
examine cargo crossing the United States Border, in violation of 18 U.S.C. § 371,
through deceitful and dishonest means by knowingly causing false and misleading

information to be submitted to the United States government via the Automated Export System, in violation of 13 U.S.C. § 305.

65. The evidence stated herein establishes probable cause to believe that MOIN, along with others, have knowingly and willfully attempted to export U.S.-origin goods to Iran, without first obtaining the required export license, in violation of IEEPA, 50 U.S.C. § 1705 and the ITSR, 31 C.F.R, §§ 560.203 and 560.204.

66. The evidence stated herein establishes probable cause to believe that MOIN did knowingly and willfully conspire with others to violate IEEPA, 50 U.S.C. § 1705 and the ITSR, 31 C.F.R, §§ 560.203 and 560.204 in violation of 18 U.S.C. § 371.

67. At all times relevant to this investigation, the ITSR, IEEPA, and the EAR were in effect and that permission, in the form of a validated export license issued by the U.S. Government, was required to legally export the equipment described above to Iran.

68. At no time did any party associated with these transactions, apply for, receive, or possess a license or authorization from OFAC or BIS to export goods, technology, or services, of any description, to Iran.

69. Wherefore, I request that a criminal complaint be issued for Martin MOIN for violations of Title 50 U.S.C. §1705; 31 C.F.R. §§ 560.203 and 560.204; and 18 U.S.C. § 371.

## REQUEST FOR SEALING

70. I further request that the Court order that all papers in support of this application,
    including the affidavit and criminal complaint, be sealed until further order of the
    Court. These documents discuss an ongoing criminal investigation, involving
    undercover activity and covert operations, which is neither public nor known to all of
    the targets of the investigation. Accordingly, there is good cause to seal these
    documents because their premature disclosure may seriously jeopardize that
    investigation.

Dustin Dobbs
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 14th day of ~~October 2018~~ May 2019.

United States Magistrate Judge
United States District Court
Southern District of Ohio

25